IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| LLOYD BROWN and JOHN DOE, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case: |
| SHELBY COUNTY, TENNESSEE; ) | |
| the CITY OF MEMPHIS, TENNESSEE; ) | JURY TRIAL DEMANDED |
| HERBERT H. SLATERY III; UNKNOWN ) | |
| JUDICIAL COMMISSIONER; ) | |
| WILLIAM C. TURNER; AMY P. ) | |
| WEIRICH; LLANA L. GREER; NAKIA ) | |
| KIRKWOOD; HUGH GROGAN; and ) | |
| DON CROWE, ) | |
| ) | |
|     Defendants. ) | |

**COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF UNDER 42 U.S.C. § 1983**

The Plaintiff, Lloyd Brown, now sues the above-captioned defendants, on behalf of himself and similarly situated others, based on the following grounds:

I.

## NATURE OF THE ACTION

1.      This is a civil-rights action seeking class certification and for declaratory, injunctive, and monetary relief against certain political subdivisions of the State of Tennessee, as well as certain State and local government officers and employees, for certain policies, customs, and practices related to the implementation of global positioning system ("GPS") monitors as a pre-adjudicatory

bail condition for persons accused of certain crimes. The Plaintiff, Lloyd Brown, sues on behalf of himself and similarly situated others for the constitutional deprivations caused by the summary and capricious imposition of GPS monitors on all persons accused of certain categories of criminal offense and for injury and disfigurement caused by fungal or other infections associated with the use of GPS monitors as a condition of pretrial release in Shelby County, Tennessee.

## II.

### JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988; the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution; Article I, Sections 7–9, 13, and 16–17 of the Tennessee Constitution; the Tennessee Governmental Tort Liability Act; and Tennessee common law. This Court's jurisdiction over these causes is predicated on 28 U.S.C. §§ 1343(3) and (4) and 1331.

3.      Venue for this action is properly laid in the Western District of Tennessee, within the territorial boundaries of which occurred all acts, transactions, and events pertinent hereto.

## III.

### PARTIES

4.      Plaintiffs:

    (a)      Lloyd Brown is, and at all pertinent times was, a resident of Shelby County, Tennessee;

(b)     John Does are persons apprehended within the territorial boundaries of Shelby County, Tennessee and charged with certain categories of criminal offenses.  John Does' true names and residences have not been ascertained but may be ascertained from records in the possession, custody and control of the Defendants.

5.     Defendants:

(a)     Shelby County, Tennessee (the "County") is a political subdivision of the State of Tennessee and, among its other functions, maintains and operates an office known as Shelby County Pretrial Services, an initiative of its Division of Community Services.  The County has a duty to oversee and administer its activities in a lawful manner, in compliance with statutes, and so as to preserve the rights, privileges, and immunities guaranteed and secured to County residents and visitors by the United States Constitution and the Constitution and common law of Tennessee. The County is a person subject to suit under 42 U.S.C. § 1983.

(b)     The City of Memphis, Tennessee (the "City") is a municipality duly incorporated under the laws of Tennessee, and as such, is a political subdivision of the State of Tennessee.  Among its other functions, the City maintains and operates a law enforcement agency known as the Memphis Police Department.  The city is under a duty to operate its police activities in a lawful manner so as to preserve the peace of the City and the rights, privileges and immunities guaranteed and secured to its residents and visitors by the by the United States Constitution and the Constitution, statutes, and common law of Tennessee.  The City is a person subject to suit under 42 U.S.C. § 1983.

(c)     Attorney General Herbert H. Slatery III is the Attorney General for the State of Tennessee.  He is named as a defendant because this suit challenges the facial and/or as-applied constitutionality of certain Tennessee statutes.

(d)     Unknown Judicial Commissioner is an as-yet unknown magistrate duly appointed by the Shelby County Board of Commissioners.  She is sworn and obligated to exercise her quasi-judicial functions lawfully, in strict compliance with Tennessee statute, and to preserve and defend the rights, privileges, and immunities guaranteed and secured by the United States Constitution and the Constitution and common law of Tennessee to any persons accused of a

crime.  She is sued strictly in her official capacity for declaratory and/or injunctive relief only.

(e)     The Honorable William C. Turner is, and at all pertinent times was, Judge of Division 10 of the General Sessions Criminal Court of Tennessee for the Thirtieth Judicial District at Memphis.  He is sworn and obligated to administer his courtroom and exercise judicial functions lawfully, in strict compliance with Tennessee statute, and to preserve and defend the rights, privileges, and immunities guaranteed and secured by the United States Constitution and the Constitution and common law of Tennessee to any persons accused of a crime.  He is sued strictly in his official capacity and for declaratory and/or injunctive relief only.

(f)     Amy P. Weirich is, and at all pertinent times was, the District Attorney General for the Thirtieth Judicial District of Tennessee (Shelby County).  She is sworn and obligated to administer the Office of the Shelby County District Attorney General (the "SCDAG") for the  promotion of justice and to protect and defend the rights, privileges, and immunities guaranteed and secured by the United States Constitution and the Constitution and common law of Tennessee to all persons within the territorial boundaries of the Thirtieth Judicial District, including those accused of committing crimes.  She is sued strictly in her official capacity and for injunctive relief only.

(g)     Llana L. Greer is, and at all pertinent times was, employed Shelby County and commissioned as the Executive Director of Shelby County Pretrial Services ("Pretrial Services"), an initiative of Shelby County's Division of Community Services.  She is sued in her individual capacity, for her gross negligence and other acts as an individual, and in her official capacity as Executive Director of Pretrial Services.

(h)     Nakia Kirkwood is, and at all pertinent times was, employed by Shelby County and commissioned as the Court Operations Supervisor of Pretrial Services, being thus responsible for interviewing arrestees at the Shelby County Criminal Justice Center and assessing non-monetary bail conditions.  She is sued in her individual capacity, for her gross negligence and other acts as an individual, and in her official capacity as Court Operations Supervisor for Pretrial Services.

(i)     Hugh Grogan is, and at all pertinent times was, employed by Shelby County and commissioned as the Day Reporting Supervisor for Pretrial Services, being thus responsible for administering, monitoring, and enforcing compliance with those individuals ordered to wear GPS monitors as conditions of their pretrial release. He is sued individually, for his gross negligence and other acts as an individual, and in his official capacity as Day Reporting Supervisor for Pretrial Services.

(j)     Deputy Chief Don Crowe of the Memphis Police Department (the "MPD") is, and at all pertinent times was, a police officer employed and commissioned by the MPD to perform duties in the City of Memphis, Tennessee. He is sued individually, for his gross negligence and other acts as an individual, and in his official capacity as ranking officer over the MPD's Real-Time Crime Center (the "RTCC"), the subdivision of MPD that tracks the GPS monitors attached to certain persons on parole, probation, or pretrial release pursuant to its arrangement with Pretrial Services.

## IV.

## ALLEGATIONS OF FACT

6.     Prior to the events herein below described, Mr. Brown was employed as a finance professor at Texas A&M University, had no criminal history, and was engaged in divorce proceedings against his wife.

7.     On or about January 3, 2019, Mrs. Brown called the police and falsely accused Mr. Brown of assaulting her.

8.     When officers did not promptly respond on scene, Mr. Brown travelled to the nearest police precinct in a good-faith effort to cooperate with law enforcement and speak with them about the substance (or lack thereof) of his wife's accusations.

9.      At the time Mr. Brown drove to the police precinct to speak with officers about his wife's false allegations, Mr. Brown had his registered personal firearm secured in a disassembled state in a locked gun safe in the trunk of his car, and Mr. Brown informed officers of this fact when he arrived at the precinct.

10.     At the precinct, police arrested Mr. Brown for assault against a domestic partner, placing him into custody based solely on the hearsay accusations of his wife.

11.     After being processed at the Shelby County Criminal Justice Center, without counsel and having been afforded no opportunity to retain or consult with the same, Mr. Brown appeared before the Unnamed Judicial Commissioner for a determination of his pretrial bail conditions on or about January 3, 2019.

12.     As a condition of Mr. Brown's pre-trial release from custody, the judicial commissioner ordered Mr. Brown to wear a GPS ankle monitor at all times.

13.     When the judicial commissioner ordered Mr. Brown to wear a GPS monitor as a condition of his bail, he or she propounded no particularized findings of fact to justify the placement of the GPS monitor.

14.     Pursuant to Tennessee statute, Division 10 of the Shelby County General Sessions Criminal Court has, and at all pertinent times had, exclusive original jurisdiction over pre-indictment accusations of domestic-partner violence or abuse.

15.     At all pertinent times, as a matter of policy, the SCDAG universally opposed any request by a defendant in Division 10 to modify his pre-trial bail

conditions to remove the imposition of the GPS monitor. Upon information and belief, this practice is ongoing.

16.     Upon information and belief, the SCDAG's policy of blind and universal opposition to the removal of GPS monitors of pre-trial defendants in Division 10 was and is perpetuated in bad faith, in an effort, *inter alia*, to obtain collateral advantage over accused persons and to obtain data for the for a GPS-monitor pilot study conducted in partnership between the SCDAG, the MPD, and the University of Memphis.

17.     As a matter of policy, custom, and/or practice, Division 10 of the Shelby County General Sessions Criminal Court ("Division 10") afforded defendants no meaningful opportunity for review of the bail conditions initially set by the judicial commissioner.

18.     The Defendants' policies, customs, and practices as alleged in paragraphs 15–17 effectively affirmed the initial bail conditions set by judicial commissioners by making it impracticable and unadvisable for defense attorneys to challenge or oppose these conditions.

19.     Furthermore, because the SCDAG's blind opposition to, and Division 10's routine denial of meaningful review of, the mandatory imposition of GPS monitors as a bail condition was well known to defense attorneys practicing in

7

Division 10, Mr. Brown's defense attorney could not have challenged Mr. Brown's initial bail conditions with any reasonable expectation of success.[1]

20.     In fact, Mr. Brown's defense attorney did not challenge the imposition of a GPS monitor as a condition of Mr. Brown's bail because he reasonably expected such a challenge would only have subjected his client to the risk of harsher bail conditions.

21.     At the time, Mr. Brown could not afford to risk harsher bail conditions that may have included an unreasonably high bond or even bond revocation and confinement.   As a finance professor at the Texas A&M University, he had professional obligations to his students and institution.  He also needed his job.

22.     Reasonably believing that the only way to have Mr. Brown's GPS monitor removed was to get the matter in front of a court of record, Mr. Brown's defense attorney advised him to waive his probable-cause hearing so the matter would be more quickly indicted and sent "upstairs" to Shelby County Criminal Court.

23.     Unsurprisingly, as soon as Mr. Brown was arraigned in Division II of Shelby County Criminal Court, Judge Glenn Wright ordered the removal of the GPS monitor, citing a lack of legal basis for its ever having been imposed.

24.     The process, however, took time.  Pretrial Services attached the GPS monitor to Mr. Brown on January 3, 2019.  Mr. Brown was bound over to the grand jury in March 2019.  It took another three months for the Grand Jury to indict Mr.

---

[1] The attorney who represented Mr. Brown in his criminal matter takes no part whatsoever in this suit.

Brown, which occurred on June 4, 2019.  On July 8, 2019, Mr. Brown's case was set for initial appearance in Division II of Shelby County Criminal Court.  The matter was continued until August 27, 2019, at which time Judge Glenn Wright removed the GPS monitor. All told, Mr. Brown wore a court ordered GPS monitor for seven months and twenty-four days before a meaningful review of his bail condition occurred.

25.    Upon information and belief, during the seven months and twenty-four days the GPS monitor was attached to Mr. Brown, the MPD's RTCC collected, collated, and retained detailed information about Mr. Brown's location and movement at all hours of the day or night.

26.    While awaiting his first appearance in criminal court, Mr. Brown developed a severe fungal infection on his ankle where the GPS monitor contacted his skin.

27.    Mr. Brown repeatedly complained to Pretrial Services about the skin infection caused by the GPS monitor they were forcing him to wear.

28.    Pretrial Services, with deliberate indifference, refused to replace or adjust, Mr. Brown's GPS monitor with one that would not infect his skin, or provide him with adequate medical attention, to inform the Court, or to take any meaningful corrective action whatsoever with respect to Mr. Brown's infection caused by the GPS monitor.

29.    As a result of Pretrial Services' deliberate indifference and non-responsiveness to Mr. Brown's repeated medical complaints, he had to continue to

wear the defective GPS monitor, perpetuating and aggravating the skin infection it was causing him.

30.   The skin infection caused by the defective GPS monitor that Pretrial Services forced Mr. Brown to wear caused him significant pain and discomfort.

31.   The skin infection caused by the GPS monitor that Pretrial Services forced Mr. Brown to wear permanently disfigured him.

32.   A particularized factual review, had one been conducted at Mr. Brown's initial appearance before the judicial commissioner or subsequently by the General Sessions Criminal Court, would have revealed at least the following facts about Mr. Brown:

    (a)    He had no criminal history;

    (b)    He was gainfully employed as a finance professor at a respected American University;

    (c)    His wife, the initiating complainant and sole source of evidence against him, had made false representations to the court and otherwise perjured herself during the course of the couple's divorce proceedings; and

    (d)    He had significant ties to Shelby County including familial ties, his marital home, and a pending divorce.

33.   On December 13, 2019—eleven months and ten days after Mr. Brown's initial arrest—both criminal charges against Mr. Brown were dismissed without court costs.  Although the criminal case had concluded in his favor, Mr. Brown's life and privacy were disrupted, he was permanently disfigured, and the policies,

customs, and practices responsible remain commonplace at the Shelby County Criminal Justice Center.

## V.

## CLASS ALLEGATIONS

34.     The treatment and conditions to which Mr. Brown and the members of
the classes he seeks to represent have been subjected—the deprivation of counsel at
the initial appearance before the judicial commissioner; the judicial commissioner's
summary and capricious imposition, without particularized findings of fact, of GPS
monitoring as a bail condition; the General Sessions Court's unwillingness to
meaningfully review a judicial commissioner's imposition of GPS monitoring as an
initial bail condition; the SCDAG's blind, universal, and bad-faith opposition to any
Division 10 defendant's request to remove the GPS monitor as a bail condition; the
RTCC's tracking and storing of location information transmitted by the GPS
monitor; the County and City's providing fungus-infected or otherwise dangerously
defective GPS monitors for use by Pretrial Services; Pretrial Services' attachment of
fungus-infected or otherwise dangerously defective GPS monitors to pre-trial
defendants; the failure of Pretrial Services to take reasonable precautions to
minimize the risk of infection from the GPS monitors to persons forced to wear
them; and the failure of Pretrial Services to meaningfully remedy fungus or other
skin infections caused by the fungus-infected or otherwise dangerously defective
GPS monitors—were examples of, and wholly attributable to, the Defendants'
policies, customs, or practices.

35.     Mr. Brown, on behalf of himself and other persons similarly situated,
seeks an order declaring some or all of the Defendants' policies, customs, or

practices, as set forth above, to be unlawful and in violation of Mr. Brown and similarly-situated persons' constitutional rights.

36.     Mr. Brown seeks certification of two classes of plaintiffs:

(a)     Those individuals presently subjected, and those likely to be subjected in the future, to the practice in Shelby County of summarily attaching GPS monitors to any defendant accused of certain offenses (the "Due-Process Class"); and

(b)     Those individuals injured by fungal or other skin infection, or any other reasonably foreseeable medical condition, caused by the defective GPS monitors Pretrial Services has forced these individuals to wear and exacerbated by refusing to take reasonable preventative or corrective action when put on notice of the GPS monitors' defective condition (the "Defective Monitor Class").

37.     Upon information and belief, the persons in these proposed classes are so numerous that the joinder of all members of either proposed class would be impractical.   Mr. Brown does not know the exact number of persons in either proposed class.   Upon information and belief, the Due-Process Class contains upwards of two thousand members, and the Defective Monitor Class contains at least one hundred.

38.     There are common questions of law and fact affecting all members of the proposed classes and said common questions predominate over any questions affecting the individual members to such a degree that a class action is the only practical method available for the fair and efficient adjudication of this controversy.

## VI.

## <u>FEDERAL CAUSES OF ACTION</u>

39.    The allegations set forth in paragraphs 1–38 are hereby reiterated and incorporated by reference as if fully stated hereunder.

40.    The hereinabove described actions and omissions, engaged in under color of state authority by the Defendants deprived Mr. Brown of certain rights secured to him by the United States Constitution, including without limitation his

(a)    Fourth Amendment right to be free from unreasonable searches and seizures;

(b)    Fifth and Fourteen Amendment rights to due process under and equal protection of the law;

(c)    Sixth Amendment right to counsel;

(d)    Eighth Amendment right to be free from excessive bail or unreasonable bail conditions;

(e)    Eighth Amendment right to be free from cruel and unusual punishment;

(f)    certain fundamental rights unenumerated  in the United States Constitution but secured by the Ninth Amendment, including without limitation his rights to privacy, bodily integrity, and interstate travel; and

(g)    Fourteenth Amendment right to the  unabridged privileges and immunities due United States citizens.

41.    The violations cited under this count caused Mr. Brown grievous injury, and similar violations inflicted similar injury on similarly situated others, and these violations and resulting injuries were sufficiently outrageous, egregious, and conscience-shocking to entitle Mr. Brown and the members of both classes

14

proposed above to recover punitive or exemplary damages from those defendants not shielded by judicial, prosecutorial, or qualified governmental immunity.

## VII.

## PENDANT CAUSES OF ACTION

42.     The allegations set forth in paragraphs 1–38 are hereby reiterated and incorporated by reference as if fully stated hereunder.

43.     The acts and omissions hereinbefore alleged deprived Mr. Brown and persons similarly situated of certain rights secured to them by the Constitution of Tennessee.   This Court has pendant jurisdiction to hear and adjudicate these claims.

44.     Furthermore, the acts and conduct hereinbefore alleged constitute abuse of process; negligent, grossly negligent, and reckless conduct; negligent, grossly negligent, and reckless hiring and retention; and negligent, grossly negligent, and reckless training and supervision under the common law of Tennessee.   This Court has pendent jurisdiction to hear and adjudicate these claims.

45.     The violations cited under this count caused Mr. Brown grievous injury, and similar violations have inflicted and will continue to inflict similar injury on similarly situated others, and these violations and resulting injuries were sufficiently outrageous, egregious, and conscience-shocking to entitle Mr. Brown and the members of both classes proposed above to recover punitive or exemplary

damages from those defendants not shielded by judicial, prosecutorial, or qualified governmental immunity.

## VIII.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     For this Court to set a hearing, at the earliest practicable date, to consider the granting of a preliminary injunction enjoining and restraining Defendants from engaging in the policies, practices and conduct complained of herein pending final adjudication of this case on its merits;

B.     For this court to set a hearing, at the earliest practicable date, to determine the question of class certification, and to order Defendants to promptly produce sufficient records within their custody or control to allow for the determination of membership within the classes proposed above;

C.     For a jury to be empaneled to hear and decide the merits of all issues set forth or fairly raised herein;

D.     For declaration that Defendants' policies, practices, and conduct as alleged herein  are unlawful and in violation of the aggrieved parties' rights under United States and Tennessee constitutions and the laws of Tennessee;

E.     For compensatory damages in an amount to be determined according to the proof;

F.     For punitive or exemplary damages in an amount sufficient to punish the deliberate constitutional violations hereinbefore alleged and deter similar violations from the same or similar state actors in the future;

G.     For an award of litigation costs, expenses, and reasonable attorney fees as provided by federal law; and

H.     For such other and further relief as the Court deems just and proper under the circumstances.

Dated this the 3rd day of January, 2020.

                              Respectfully submitted,

                              APPERSON CRUMP PLC

                              /s/Bruce S. Kramer
                              Bruce Kramer (TN 7472)
                              Melody Dernocoeur (TN 35108)
                              Jacob Webster Brown (TN 36404)
                              6000 Poplar Avenue, Suite 150
                              Memphis, Tennessee 38119
                              Telephone:   (901) 756-6300
                              Facsimile:   (901) 757-1296
                              bkramer@appersoncrump.com
                              jbrown@appersoncrump.com
                              mdernocoeur@appersoncrump.com
                              *Attorneys for Plaintiff*

17